GEORGE A. THORN AND OTHERS v. GEORGE A. HORMEL & COMPANY.[1]

January 5, 1940.

No. 32,204.

[1]Reported in 289 N. W. 516.

*Robertson, Crowe & Spence, James H. Robertson, Edison & Edison,* and *Henry L. McIntyre,* for appellants.

*Catherwood, Hughes & Alderson,* for respondent.

HOLT, JUSTICE.

The appeal is from an order sustaining a demurrer to the complaint.

The complaint alleges that defendant is a Delaware corporation engaged in packing house business (at Austin, Minnesota), including the slaughtering of hogs and the packing and sale of hog and pork products, it being the processor of hogs as defined by the Agricultural Adjustment Act (May 12, 1933, 48 St. 31, c. 25, 7 USCA, § 601, *et seq.*), and in connection therewith it purchases hogs from farmers and producers of hogs. It is alleged that defendant has retained the tax imposed under the provision of the act upon the processing of the hogs sold to it in the several transactions set forth in the complaint—26 separate sales of hogs upon different dates, each of the five plaintiffs making two or more unconnected sales. All sales occurred while the act was in effect. The number of hogs in each sale, as well as their combined weight, and the amount paid by defendant to each plaintiff are alleged. It is also averred that many hundreds of farmers and producers of hogs in this and other states have sold hogs to defendant on which it has not paid the processing tax to the government, and plaintiffs bring this action for themselves and all sellers of hogs similarly situated to recover the amount of the tax so retained by defendant; and, because the amount of the tax so retained is relatively small on each separate sale of hogs the expense of bringing separate actions is prohibitive, this suit is brought as a class suit. The passage of the Agricultural Adjustment Act is set forth, also the imposition of the tax at specified rates during the time the act was in effect until held invalid

by the Supreme Court of the United States on January 6, 1936 (United States v. Butler, 297 U. S. 1, 56 S. Ct. 312, 80 L. ed. 477, 102 A. L. R. 914). It is alleged that after the imposition of the tax, under the regulations of the secretary of agriculture, all sales of hogs to defendant were made in contemplation of the payment of such tax by the processor, and from the price paid the seller of each hog sold, from November 5, 1933, to January 6, 1936, there was deducted the amount of the tax which has not been paid to the government but is retained by defendant; and that the sums of which plaintiffs and other sellers of hogs have been thus deprived have unjustly enriched defendant, and it ought to refund the same to the sellers. It is also alleged that the amount of the tax thus retained is a trust fund in which the sellers of hogs to defendant are the beneficiaries, and plaintiffs ask for an accounting thereof, and of course that their costs and expenses incident to the suit be determined and ordered paid out of the amount recovered and the remainder distributed to the sellers of hogs processed by defendant. Defendant demurred upon several grounds.

There are four assignments of error, but plaintiffs in the brief treat the first and fourth as one, discussing it last. We shall follow the same order.

Did the court err in holding that the complaint did not contain sufficient allegations to justify the bringing of a class suit? It is contended that 2 Mason Minn. St. 1927, § 9165, authorizes the maintenance of this suit by plaintiffs as representing a class, reading:

"Except when otherwise expressly provided by law, every action shall be prosecuted in the name of the real party in interest; but this section shall not authorize the assignment of a thing in action not arising out of contract: Provided, that when the question is one of common or general interest to many persons, or when those who might be made parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

Pencille v. State Farmers' Mut. H. Ins. Co. 74 Minn. 67, 76 N. W. 1026, 73 A. S. R. 326, is cited to the proposition that even before the quoted statute a class suit could be maintained. But that was a suit in equity to restrain the directors of a mutual insurance company from making and enforcing an assessment against its every member. This is an action at law to recover money and nothing else. Kaufer v. Ford, 100 Minn. 49, 110 N. W. 364; Fairley v. City of Duluth, 150 Minn. 374, 185 N. W. 390, 32 A. L. R. 1258; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356, are cited by plaintiffs as authorizing a class suit in the instant case. But it is apparent that in each case cited no recovery of money was sought. The Kaufer case involved a county seat, where an adjudication obtained by a resident taxpayer was held conclusive upon all. The Fairley case was a suit in equity to enjoin the enforcement of a wheelage tax imposed by the city. The Fitchette case was an action brought by the president and secretary of a county bar association to enjoin a layman from practicing law. Each of these three cases was clearly a suit in equity and concerned a common right of each plaintiff and those similarly situated. There was no claim of damages by any plaintiff, while in the case at bar each plaintiff seeks to recover specified sums arising out of separate sales of hogs to defendant. The like separate sale of hogs applies to every producer of hogs whom plaintiffs claim to represent. Much reliance is placed on Duke of Bedford v. Ellis, Law Rep. Appeal Cases [1901] page 1 (House of Lords). But it is to be noted that it was a suit by certain growers of fruit, flowers, vegetables, etc. to enforce a public act granting preferential rights to the plaintiffs and others similarly situated to stands at the market operated by the Duke (9 Geo. 4, c. cxiii), coupled with claims for overcharges. It was held a proper class suit; but it should be pointed out that it was stressed for the majority view that the demand for refund of overcharges was merely subsidiary to the main cause of action to enforce a right common to each plaintiff and to all in plaintiffs' situation. We think our decisions indicate that

plaintiffs cannot maintain this action as a class suit for the reason that plaintiffs set forth separate and distinct transactions between each plaintiff and defendant for which each has a speedy and adequate remedy at law. No equitable relief is sought, simply the recovery of money alleged to be wrongfully withheld by defendant. Grant v. Schmidt, 22 Minn. 1; Nahte v. Hansen, 106 Minn. 365, 119 N. W. 55. The syllabus in the latter is:

"All persons whose property is affected by a nuisance, though they own the property in severalty, may unite in an action to abate the nuisance; but they cannot join with a cause of action for that relief their several claims for damages, in which there is no joint or common interest."

The Federal Equity Rule 38 (28 USCA, p. 21), akin in purpose to our statute above quoted, reading: "Representatives of Class.— When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole," has been held not to authorize such representative suit where purchasers of the processed product sued the processor for an accounting of the processing tax retained. O'Connor-Bills, Inc. v. Washburn Crosby Co. (D. C.) 20 F. Supp. 460, 463. There the court said that the class suit under Equity Rule 38 is untenable, for it "contemplates that several different persons may have like claims in equity against the same adversary. In the case now being considered the several plaintiffs may have actions at law, but, because they are somewhat similar, equity jurisdiction cannot be invoked merely because the law actions are numerous and of a kindred nature." To the same effect are Garfein v. Stiglitz, 260 Ky. 430, 86 S. W. (2d) 155; Spear v. H. V. Greene Co. 246 Mass. 259, 140 N. E. 795; Society Milion Athena, Inc. v. Nat. Bank of Greece, 281 N. Y. 282, 22 N. E. (2d) 374 (where the allegations in regard to setting aside transfer made to defraud creditors was held to state a cause of action in equity).

594

Plaintiffs contend that the suit is one in equity for an accounting; that even if it be considered as one of unjust enrichment or for money had and received it is based upon equitable principles; but always in this state such recovery may be had in an action at law. 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 6126, and cases therein cited; Todd v. Bettingen, 109 Minn. 493, 500, 124 N. W. 443. There are no allegations from which the retained tax may be considered a trust fund—surely no express trust is set out. Nor are facts stated from which a constructive trust may be found in which plaintiffs have a common interest. If there be any money in the hands of defendant from a detention of the processing tax from the government, it was derived from distinct separate deals with each seller of hogs to defendant. Every such sale of hogs made defendant the debtor of the seller to the extent of the agreed purchase price. The only and sole purpose of this action is the recovery by each plaintiff or seller of the balance of the claimed unpaid purchase price for the hogs sold. Clearly, several actions at law are improperly joined. Each plaintiff and defendant are entitled to a jury trial as to the right of recovery upon each transaction and the amount thereof. Such trials at law would furnish an adequate and speedy remedy for each transaction pleaded, and there is no occasion for an action in equity.

We also think the complaint fails to state facts constituting a cause of action, and is hence demurrable. The processing tax was imposed upon defendant—the processor of hogs—and its duty was to pay the tax to the government. Neither the sellers of the hogs nor the buyers of the processed product owed any duty in respect to the processing tax. No provision in the act is called to our attention which forbids the processors of hogs to shift the burden of the tax in whole or in part upon the sellers of the hogs or upon the buyers of the processed products. The act evidently left the fair distribution of the burdens of the tax to competition, unless there was some special or express agreement between the processor on the one hand and the seller of the animals to be processed or the buyer of the processed product on the other. No such agreement is alleged. That the packers

of hogs contemplated to provide for the payment of the tax by paying less to the producers of hogs and asking more for the processed pork products creates no obligation on the part of the packers to distribute to either sellers or buyers any part of the tax not collected by the government. There are numerous decisions holding that as to buyers of processed products there is no obligation on the part of the processor to account to them for retained processing tax, in the absence of an agreement so to do. Zinsmaster Baking Co. v. Commander Milling Co. 200 Minn. 128, 273 N. W. 673, and other federal and state decisions therein cited; Golding Bros. Co. Inc. v. Dumaine (1 Cir.) 93 F. (2d) 162, 115 A. L. R. 664; Cohen v. Swift & Co. (7 Cir.) 95 F. (2d) 131 (where also the duress proposition invoked by plaintiffs here was decided adversely) ; Continental Baking Co. v. Suckow Milling Co. (7 Cir.) 101 F. (2d) 337. Plaintiffs contend that there is a difference in the situation of sellers of articles for processing and those of buyers of processed products with respect to the equitable right to share in the tax not paid by the processor because adjudged unconstitutional, and cite United States v. Jefferson Elec. Mfg. Co. 291 U. S. 386, 54 S. Ct. 443, 78 L. ed. 859. But that was a case where the right to sue the government for a refund of a paid sales tax was by a statute qualified by the condition that the burden of the illegal tax must be shown to rest upon the manufacturer alone and not at all upon the purchasers of the goods manufactured. Plaintiffs take comfort in language used in Wayne County Produce Co. v. Duffy-Mott Co. Inc. 244 N. Y. 351, 353, 155 N. E. 669, where Chief Judge Cardozo, speaking of the facts there presented said:

"This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller  *   *   *  This is a case where the promise of the buyer is to pay a stated price, and to put the seller in funds for the payment of a tax besides."

No such promise is alleged in the complaint here involved. The case of Security Stores, Inc. v. Colorado Mill. & Elev. Co. 102 Col. 471, 79 P. (2d) 371, accords with the propositions stated in the New York case and does not sustain plaintiffs in the case at bar. We are unable to see that the sellers to the processor stand in a different or more favorable position than the purchasers of the processed products with respect to the right to claim any part of the processing tax retained by the processor.

The order is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

